JONES, Justice.
The sole question for review concerns the construction of the Solid Wastes Disposal Act (Title 22, §§ 346-351, Code). More specifically, the issue is whether the provi *654 sions of § 347(a) (“ . . . may, and is hereby authorized to”) are mandatory or permissive. The trial Court, denying the relief sought by the Alabama State Board of Health against Chambers County, ruled that these provisions are permissive. We agree. The judgment below is affirmed.
§ 347 provides:
“(a) Generally. — The county governing body or municipal governing body may, and is hereby authorized to, make available to the general public collection and disposal facilities for solid wastes. The county or municipal governing body may provide such collection or disposal services by contract with private or other controlling agencies, and may include house-to-house service, or the placement of regularly serviced and controlled bulk refuse receptacles within reasonable (generally less than eight miles) distance from the farthest affected household and the wastes disposed of in a manner acceptable to the health department and within the meaning of this chapter.
“(b) Garbage Disposal. — Garbage and rubbish containing garbage shall be disposed of by sanitary landfill, approved incineration, composting, or by other means now available or which may later become available as approved by the health department and under the supervision and control of a governmental, private, or other agency acting within the provisions of this act.
“(c) Burning. — No garbage, or rubbish containing garbage or other putrescible materials, or hazardous wastes shall be burned, except in approved incinerators meeting the necessary temperature requirements and air pollution controls as now established or may later be established. The open burning of rubbish shs.ll be permitted only under sharply controlled circumstances where sanitary landfill, or landfill is not feasible, and not in proximity to sanitary landfill or landfill operations where spread of fire to these operations may be a hazard in the opinion of the controlling agency.
“(d) Haulage. — Trucks or other vehicles engaged in the business of hauling garbage and rubbish shall be so covered, secured or sealed that there will be no loss during haulage to cause littering of streets and highways, or cause a nuisance or hazard to the public health.
“(e) Exception: A household, business, industry or any property owner may store, haul and dispose of his own solid wastes on his own land or otherwise, provided such storage, haulage or disposal is accomplished pursuant to a certificate of exception as provided herein. In order to obtain a certificate of exception, an application and plan must be filed with the county health officer or his designee setting out the proposed method of storing, hauling and disposing of solid waste so as to comply with rules and regulations adopted by the state or county boards of health and not create a public nuisance or hazard to the public health. Such officer or designee shall investigate such application and plan and issue a certificate of exception if such proposal will, in such officer’s or designee’s judgment comply with such rules and regulations and adequately prevent a public nuisance or hazard to public health.”
This case has been ably briefed and argued by counsel and we believe our analysis of the dispositive issue can best be understood in the context of the respective contentions of the parties.
THE ATTORNEY GENERAL’S CONTENTIONS
In support of the State’s argument, five rules of statutory construction are stated:
(1) Permissive words in a statute may be construed as being mandatory in those cases where the public interest and rights are concerned and where the public or third persons have a claim de jure. Ex parte Simonton, 9 Port. 390 (1839).
(2) A statute must be considered as a whole and every word in it made *655 effective if possible. State By and Through State Board for Registration of Architects v. Jones, 289 Ala. 353, 267 So.2d 427 (1972).
(3) Where a legislative provision is accompanied by a penalty for failure to comply with it the provision is mandatory. Rodgers v. Meredith, 274 Ala. 179, 146 So.2d 308 (1962).
(4) Where two sections or provisions of an act are conflicting the last in order of arrangement controls. State v. Crenshaw, 287 Ala. 139, 249 So.2d 622 (1971).
(5) The purpose of statutory construction is to ascertain, not only from the language used by the legislature, but also from the reason and necessity for the act, the evil sought to be remedied, and the object and purpose sought to be obtained. Rinehart v. Reliance Insurance Company, 273 Ala. 535, 142 So.2d 254 (1962).
The Attorney General also contends that the mandatory effect of § 347(a) becomes even more apparent when that section is read in conjunction with § 349 which provides:
“The accomplishment of solid waste management practices, within the meaning of this act, shall be within a period of not more than two years following the signing of this act into law, or such lesser time as may be determined to be in the public interest by the health department. Where the affected governing bodies can demonstrate to the satisfaction of the health department that compliance to the two-year limitations is economically infeasible, the controlling agency may petition for a yearly extension, but this shall not preclude the possibility of nuisance or public hazard suits brought on by individuals or other entities.” (Emphasis added.) '
: The obvious effect of § 349, says the ..Attorney General, is to impose a deadline by which time .county governing bodies must provide a comprehensive solid waste collection and disposal program throughout the county. Unless § 347(a) is mandatory, the imposition of a deadline in § 349 makes no sense and is useless verbiage. This was, in essence, the rationale of the Attorney General’s opinion holding the statute mandatory (Opinion to Dr. Ira L. Myers, State Health Officer, dated May 3, 1971).
THE COUNTY’S CONTENTIONS
The County has no dispute with the foregoing rules of statutory construction per se, but it feels that they are not applicable in the instant case.
The County maintains the polestar of statutory construction is that the intention of the legislature must be given effect. Boswell v. South Central Bell Telephone Co., 293 Ala. 189, 301 So.2d 65 (1974); State v. AAA Motor Lines, Inc., 275 Ala. 405, 155 So.2d 509 (1963). In determining the intent of the legislature, the Court must look to the language of the statute. State v. Zewen, 270 Ala. 52, 116 So.2d 373 (1959). Furthermore, the Court must look to the entire act and not merely to an isolated part in construing a statute. Ex parte Wilson, 269 Ala. 263, 112 So.2d 443 (1959).
It is difficult to understand, says the County, why the legislature would place permissive words in one subsection and mandatory words in four subsections of the same section if the first subsection was intended to be mandatory as well, especially when the Court considers the rule that, in lieu of other factors, words in a statute will be given their ordinary meaning, citing Morgan County Commission v. Powell, 292 Ala. 300, 293 So.2d 830 (1974). Certainly, the legislature could have made subsection (a) mandatory if that had been the true intention of the legislature. Therefore, to construe § 347(a) as being other than permissive would be contrary to the apparent intention of the legislature as expressed by the clear wording of subsection (a) and as ' evidenced by the balance of the Solid Wastes Disposal Act. Title 22, § 346 et seq.
Additionally, the County contends the' State’s argument that the imposition in *656 § 349 of a two-year deadline renders § 347(a) obligatory ignores the remaining provisions of § 347. § 349 can hardly be said to be “useless verbage,” says the County, in light of § 347(b) (methods of garbage disposal), § 347(c) (burning garbage), § 347(d) (hauling garbage and rubbish), § 347(e) (exceptions), § 347(a) (disposal of hazardous wastes), § 348(b) (unauthorized dumps), § 348(c) (rodents and insects), all of which are mandatory on their face. § 349, reasons the County, applies to these sections even when § 347(a) is construed as being permissive; consequently, there is no conflict between § 347(a) and § 349.
DECISION OF THE COURT
We acknowledge as correct each of the five rules of legislative construction set forth in the State’s contentions; but basic to each of these rules, unless the challenged act is constitutionally offensive, is the intent of the legislature. As the Supreme Court of Alabama recognized in Thompson v. State, 20 Ala. 54 (1852):
“The inartificial manner in which many of our statutes are framed, the inaptness of expressions frequently used, and the want of perspicuity and precision not un-frequently met with, often require the court to look less at the letter or words of the statute, than at the context, the subject-matter, the consequences and effects, and the reason and spirit of the law, in endeavoring to arrive at the will of the law giver.”
Unquestionably, the legislature has the right to permissively authorize counties and municipalities to establish and maintain waste disposal systems, and to regulate through the State Department of Health the methodology employed by those counties and municipalities electing to exercise such authority. To employ the Simonton principle of rendering permissive language (“may”) obligatory (“shall”) merely because of the public welfare objective (“public health and safety”) of the legislature would deny the legislature of its prerogative to pass permissive legislation in this field. In other words, the unbridled application of Simonton would produce a mandatory interpretation irrespective of the legislature’s intent in the use of the words “. may, and is hereby authorized to . . . ”
Since it is within the legislature’s prerogative to permissively or mandatorily authorize counties and municipalities to establish waste disposal systems, the words “. may, and is hereby authorized to . . . ” must be given their usual and customary permissive meaning unless a contrary meaning is manifest from the content and spirit of the act as a whole.
The strongest argument advanced by the State is the two-year deadline for compliance imposed by § 349. At first glance, this compliance mandate appears all inclusive; and, if so interpreted, the two sections (§§ 347(a) and 349) are rendered inconsistent unless a mandatory interpretation is given to the challenged language of § 347(a). A closer examination of the introductory phrase of § 349 (“The accomplishment of solid waste management practices, within the meaning of this act . ”), however, reveals that these are words of limitation, restricting the operative effect of the deadline provision to those practices outlined in subsections (b), (c), (d), and (e), and subsections 348(b) and (c), which are mandatory by the terms of the act, and such phrase does not refer to the establishment provision of subsection (a), which is permissive by its terms.
This interpretation becomes even more apparent when considered in light of § 350 which states: “The county governing body or municipality undertaking the responsibility for providing services to the public under this chapter may . . .” This section, which appears in the original act[1] as § 5, entitled “Enabling,” by its explicit reference to those governing bodies *657 undertaking the responsibilities under this chapter implicitly recognizes that the governing bodies may elect not to undertake such responsibilities. Thus, a permissive interpretation appears consistent with the legislative intent.
Our refusal to interpret the permissive language of § 347(a) as mandatory neither ignores nor disturbs that line of cases of this Court based on the “public interest” principle of Simonton. Several of these cases, including Simonton, substituted “shall” for “may” in order to avoid declaring the statute unconstitutional (e. g., see Conecuh County v. Carter, 220 Ala. 668, 126 So. 132 (1930)). Other cases applying the Simonton principle have left the permissive language unaltered (e. g., Ex parte Banks, 28 Ala. 28 (1856)).
The case which we believe bears closest analogy to the instant case is George v. Board of Revenue and Road Com’rs of Mobile County, 207 Ala. 227, 92 So. 269 (1922). There, the Court refused to give mandatory meaning to the language of a stock law statute which gave the court of county commissioners “power and authority” to cause fences to be built on lines between “stock law” and “at large” districts. This Court in George found “no public necessity, so far as the protection of citizens is concerned” — an essential element for mandatory construction of permissive language.
Our most recent expression in this area is found in Miles v. Bank of Heflin, 295 Ala. 286, 328 So.2d 281 (1976).
“The interchangeability of ‘may’ and ‘shall’ to effect legislative intent is a sound rule; but it can be given a field of operation only where the overall expression of the legislative enactment evidences an intent and purpose contrary to the term employed. See Morgan v. State, 280 Ala. 414, 194 So.2d 820 (1967). Here, no contrary intent which permits ‘may’ to be substituted for ‘shall’ is manifest.”
The Rodgers’ principle of construing permissive language as mandatory where the legislative provision is accompanied by a penalty for failure to comply is not here applicable. As previously pointed out, the act contains mandatory provisions to which the provided penalty can be given a field of operation.
We are persuaded that our reversal of the trial Court would require that we substitute our policy judgment for that of the legislature in a field in which it has exercised its prerogative.
AFFIRMED.
HEFLIN, C. J., and MADDOX, SHORES and BEATTY, JJ., concur.

. Act No. 771, Acts of Alabama 1969, p. 1373, as amended by Act No. 2247, Acts of Alabama 1971, p. 3604.