The trial court, citing Dunn v. Alabama State Univ. Board ofTrustees, 628 So.2d 519 (Ala. 1993), held that "adjournment [of the Senate] sine die constituted the adverse action contemplated by [Ala. Code 1975, § 16-50-20(a)], which provides, in part, that '[a]ll appointments shall be effective until adversely acted upon by the Senate,' and ended Mr. Watkins's appointment by force of law."[3] I *Page 344 
believe that the trial court was eminently correct in so ruling, and I must respectfully disagree with holding of this Court, which I believe is directly contrary to the central holding in the Dunn case.[4]
In my opinion, when a constitutional or statutory provision requires that a gubernatorial appointment have "advice and consent of the Senate," the power of appointment is conferred upon the Governor and the Senate jointly. For a thorough discussion of the question of the authority of a gubernatorial appointee whose appointment requires "advice and consent" of the Senate, to serve as a member of a board of trustees of a state educational institution pending that advice and consent, see State ex rel. Little v. Foster, 130 Ala. 154, 30 So. 477
(1901), involving an appointment to the board of trustees of the University of Alabama. See also, James v. Langford,695 So.2d 1158 (Ala. 1997).
The majority recognizes that the fourth sentence of §16-50-20(a) requires, in pertinent part, that "[t]he trustees shall be appointed by the Governor, by and with the advice and consent of the Senate," and that § 16-50-25 provides, in pertinent part, that an interim appointee "shall hold office until the next session of the Legislature, when the vacancy shall be filled by the Governor by and with the consent of the Senate," and that these two sections, when read together, "clearly require that any appointment to the Board made during a legislative session be by and with the consent of the Senate," 703 So.2d at 338, and the majority admits that these two sections dealing with the Senate's role in the appointment process would constrain them "to hold that James v. Langford . . . controls and that no appointment to the Board would be effective until confirmation by the full Senate," 703 So.2d at 339, which obviously Watkins never received.
The majority concludes that a provision in § 16-50-20(a), stating that "[a]ll appointments shall be effective until adversely acted upon by the Senate," has precedence over the requirement of senate confirmation. The majority says:
 "This language, which appears as the sixth sentence in § 16-50-20(a), follows two sentences after the sentence that provides for an appointment to be made 'by and with the advice and consent of the Senate.' These two sentences — the fourth and the sixth — are clearly at odds with each other and create an ambiguity within § 16-50-20(a) as to the Senate's proper role in the appointment process. The fourth sentence contemplates that there can be no valid appointment without Senate confirmation; *Page 345 
the sixth sentence contemplates an appointment by the Governor without Senate confirmation. In essence, the sixth sentence contemplates a procedure whereby the Governor has the authority to make an appointment to the Board and the Senate has the authority to nullify that appointment by 'adversely act[ing] upon [it].' Applying well-established rules of statutory construction, basic to which is effectuating legislative intent, we agree with the parties that § 16-50-20(a) provides a mechanism whereby the Senate's supervisory role in the appointment process (its role of providing 'advice' and 'consent') is performed by virtue of its exercise of what amounts to a veto power over the Governor's appointment. We cannot conclude that the sixth sentence, providing that '[a]ll appointments shall be effective until adversely acted upon by the Senate,' was mere surplusage, given the fact that the Legislature is quite adept at creating an appointment procedure requiring an affirmative vote of the Senate to effectuate an appointment to a public university's board of trustees. See Dunn v. Alabama State University Board of Trustees, 628 So.2d 519
(Ala. 1993), discussing the creation of a board of trustees for Alabama A M University. Instead, we must give effect to every word in § 16-50-20(a), if possible, and that can be done, in keeping with our understanding of legislative intent, by holding that the sixth sentence modifies and controls the fourth sentence. See Alabama State Board of Health ex rel. Baxley v. Chambers County, 335 So.2d 653
(Ala. 1976) (where two sections or provisions of an act are conflicting, the last in order of arrangement controls)."
703 So.2d at 339.
Applying the same rules of statutory construction applied by the majority, I come to exactly the opposite conclusion. I do not believe the clause stating that "[a]ll appointments shall be effective until adversely acted upon by the Senate" is a clause that "modifies and controls" the provision stating that all appointments shall be made "by and with the advice and consent of the Senate." Requiring "advice and consent" of a legislative body to effectuate an executive appointment is a formula long used by the people or their representatives to balance power between the executive and legislative branches, or, as this Court said in the Little case, "when we go back to our constitution and laws in this State, from the beginning of the State government to the present, we find it has been the policy to distribute this appointing power among the several departments of the State." 130 Ala. at 161, 30 So. at 479.
Writing to the very issue involved in this case, this Court, in Dunn, construing the very provisions of the Code that are involved here, held that "unless the Governor's appointee is confirmed by vote of the entire Senate in the next session ofthe legislature, the trustee's appointment is ended by force of law." 628 So.2d at 525. So what do the words "All appointments shall be effective until adversely acted upon by the Senate" mean, in view of this holding? It seems clear to me that they mean that an appointee holds office until the "the entire Senate in the next session of the legislature" either gives its advice and consent, refuses to give its advice and consent, or adjourns sine die without acting on the appointment. Any other reading of the statute, in view of the specific holding inDunn, would give the legislature the power to prevent a vote on a Governor's appointee, thereby creating an imbalance of the traditional power that requires the executive branch and the legislative branch to exercise the power jointly.
If the sentence "All appointments shall be effective until adversely acted upon by the Senate" means what the majority has now interpreted it to mean, then Ross Dunn and Jo Ann Paddock (the appointees involved in the Dunn case) should be reinstated on the Board, because "the entire Senate in the next session of the legislature" did the same thing in Dunn that the Senate did here — it adjourned sine die without giving its advice and consent.
In Dunn, the defendants contended that the sentence in §16-50-20(a) stating that "[a]ll appointments shall be effective until adversely acted upon by the Senate" meant that if the Senate adjourned sine die without a floor vote on the appointments then that action would have constituted constructive *Page 346 
consent by the Senate. The majority sets out the two arguments on that same language in today's opinion:
 "What the parties disagree on in this case is the meaning to be given to the words 'adversely acted upon' in the sixth sentence of § 16-50-20(a). The Board contends that the Senate took adverse action by initially postponing and then not voting on Watkins's appointment before adjourning sine die. Relying on Dunn, the Board argues, and the trial court agreed, that anything less than an affirmative vote by the full Senate confirming an appointment by the Governor constitutes adverse action nullifying the appointment. Watkins contends that the sixth sentence of § 16-50-20(a) clearly contemplates affirmative adverse action, not inaction, to nullify an appointment. According to Watkins, to construe the sentence as the Board suggests would 'do violence to the plain language and meaning of [the] statute.' "
703 So.2d at 339. The majority then quotes from Dunn, where this Court discusses Senate Rule 32. Unfortunately, the majority does not point out the reason why it refuses to accept the holding of the Dunn Court that the sentence reading "Such appointee shall hold office until the next session of the Legislature, when the vacancy shall be filled by the Governor by and with the advice and consent of the Senate" was clear and not ambiguous. In Dunn, this Court specifically said:
 "Although we have discussed, in some detail, the defendants' arguments concerning the authority of the Senate's Committee on Confirmations to reject or divest the Governor's nominees, we have done so because of the extensive elaboration of this point in the brief of the defendants. However, the issue involved here, namely, the right of the trustee to hold office, has been clearly set forth in § 16-50-25. In other words, by virtue of this section, unless the Governor's appointee is confirmed by vote of the entire Senate in the next session of the legislature, the trustee's appointment is ended by force of law."
628 So.2d at 525. (Emphasis added.)
I agree with the holding in Dunn — the holding that today's majority calls "dictum." The provisions of § 16-50-25 are clear. The Governor's appointee here was not confirmed by the entire Senate in the next session of the Legislature. Hence, his appointment was, in the words of Dunn, "ended by force of law." 628 So.2d at 525.
BUTTS, J., concurs.
[3] Section 16-50-20(a), in its entirety, provides:
"(a) There is hereby created a board of trustees for Alabama State University, the state educational institution at Montgomery, Alabama. The board of trustees shall consist of two members from the congressional district in which the institution is located and one member from each of the other congressional districts in the state as constituted on October 6, 1975, and who shall reside in that district, four members from the state at large who shall reside in different districts, and the Governor, who shall be ex officio president of the board. Except for a trustee at large, the position of any trustee shall be vacated at such time as he shall cease to reside in the district from which he was appointed. The trustees shall be appointed by the Governor, by and with the advice and consent of the Senate, in such manner that the membership shall consist of at least a majority who are alumni and who have received a bachelor's degree from the said university; at least one-half of the board shall be from the prevailing minority population of the state according to the last or any succeeding federal census. Trustees shall hold office for staggered terms of three, six, nine and 12 years with an equal number appointed to like terms, such period of terms designated by the appointing authority, with one-fourth to expire every three years, or until their successors are appointed. All appointments shall be effective until adverselyacted upon by the Senate. Provided, however, no trustee who is currently serving on the board or whose term has just expired, who has been previously confirmed by the Senate, shall be required to be reconfirmed for the new term under this section, once appointed by the Governor. A member may be appointed to serve a second term of 12 years, but no member shall be appointed to serve as trustee for more than a total of two terms. The first members, however, shall be eligible to serve for two full additional terms in addition to their initial terms. No trustee shall receive any pay or emolument other than his actual expenses incurred in the discharge of his duties as such. No member of the governing board or employee or student of any public post-secondary education institution, no elected or appointed official having the power of review of the Alabama State University budget, other than the Governor and no employee of the State of Alabama shall be eligible to serve on the board. No member shall serve past September 30 following his seventieth birthday."
(Emphasis added.)
[4] Although I recognize that a headnote in a reported case does not control of the holding in a case, I do note that the trial court's holding in this case is identical with headnote 4 in the report of the Dunn case in Southern Reporter 2d:
 "Unless Governor's appointee to state university's board of trustees is confirmed by vote of entire Senate in next session of legislature, trustee's appointment is ended by force of law. Code 1975, § 16-50-25."
628 So.2d at 519.